IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 3:11-CV-219 |
| CAROL ANN STUTTE, *et al.*, | ) ) | |
| Defendants. | ) ) | |

**<u>MEMORANDUM OPINION</u>**

This civil action is before the court for consideration of the "Motion to Dismiss Claims for Negligent and Intentional Infliction of Emotional Distress" filed by plaintiff American National Property and Casualty Company (counter-defendant or "American National") [doc. 56]. The motion seeks to dismiss these claims that have been asserted in the counterclaim filed by defendants Carol Ann Stutte and Laura Jean Stutte (counter-plaintiffs or "the Stuttes"). The Stuttes have filed a response [doc. 59] to the motion. By an order entered October 8, 2013, the court notified the parties that it would be treating American National's motion as one for summary judgment and set a briefing schedule [doc. 62]. Because the briefing did not address the issues in the framework of the summary judgment standard, on November 19, 2013, the court ordered additional briefing for the parties to argue and document their positions regarding whether or not summary judgment was appropriate for the intentional and negligent infliction of emotional distress claims [doc. 65]. American

National filed a supplemental motion to dismiss [doc. 67],[1] and the Stuttes filed an additional response [doc. 73]. Oral argument is unnecessary, and the motion is ripe for the court's determination. For the reasons that follow, American National's motion will be granted in part and denied in part, resulting in the dismissal of the Stutte's claims.

I.

*Background*

The Stuttes insured their home in Vonore, Tennessee with American National. The home and all its contents were destroyed by fire on September 4, 2010. The Stuttes made a claim for the loss. The Stutte's position is that late in the afternoon of September 4 they traveled with their daughter and a family friend to Nashville where they later had dinner at the Wildhorse Saloon. While still at the restaurant, they received a call about 8:00 p.m. informing them that their home was on fire. Carol Ann Stutte confirmed this information with a phone conversation with someone from the Monroe County Sheriff's Office. According to Carol Stutte, she returned the night of the fire, and the remainder of the group returned the next day.

---

[1] The additional filing is captioned "ANPAC's Supplement to Its Motion to Dismiss Claims for Negligent and Intentional Infliction of Emotional Distress." However, the filing attorney used the incorrect docketing event, identifying the filing as a "motion for summary judgment," which it is not. Therefore, to the extent the filing is pending as a separate motion for summary judgment, the motion will be denied as moot. Plaintiff's filing [doc. 67] will be considered as a supplement to its original motion to dismiss that the court is considering as a motion for summary judgment. Accordingly, only *one* dispositive motion is before the court for resolution [doc. 56].

2

In support of their claim the Stuttes provided American National with a time and date-stamped parking garage receipt, admission receipts to the Wildhorse Saloon, and a dinner receipt from the Wildhorse Saloon to show that they were in Nashville at the time of the fire. The Stuttes also assert that they provided American National with information concerning threats made by a neighbor, Janice Millsaps, that included a threat to burn down their house and information that they were not in financial distress.

By a letter dated May 12, 2011, American National denied the Stuttes's claim and filed the complaint for declaratory judgment that initiated this lawsuit on the same day. The declaratory judgment alleges that the fire was intentionally caused by the Stuttes and that they breached provisions in the policy by committing concealment or fraud relating to the claim.

The Stuttes contend that American National showed a lack of care and diligence in conducting its investigation that ultimately concluded that the Stuttes committed arson and fraud. They also contend that American National failed to consider evidence demonstrating that the Stuttes were in Nashville, including time-stamped photographs; time-stamped receipts; cell phone records; and testimony of corroborating witnesses. The Stuttes also contend that American National's investigation that included the services of a private investigator, Gary Noland, was one-sided and incomplete. They maintain that Noland showed no interest in information that supported their position and their whereabouts on the night of the fire. Also, the Stuttes point out that the original analysis of their cell phone

records done by American National proved to be incorrect, but American National has not changed its position regarding the claim. The Stuttes also assert that American National has failed to consider their reasonable explanations for certain conduct that American National has relied upon in denying the claim. For example, they have offered explanations for why furniture and other items were moved from the house prior to the fire; why they raised the limits on their policy before the fire; why they changed their mailing address; why some of the group stayed in Nashville while Carol returned home the night of the fire; and why they would leave their home when they contended a neighbor had threatened to burn down the house.

American National's claims investigator, Stacey Jennings, testified in deposition concerning the factors that in combination led American National to deny the Stuttes's claim. She testified that the origin and cause investigation report showed that the fire was set; there was evidence of an explosion heard by nearby fishermen; at the scene there appeared to be an accelerant trail poured across the threshold; samples tested positive for the presence of evaporated gasoline; and the word "queers" was spray-painted on a garage left standing. When Carol Stutte was questioned about why they went to Nashville, she advised it was to celebrate living in the home for five years. According to Jennings, that raised questions because the Stuttes had reported receiving threats over that period of time and additional threats weeks leading up to the fire. The question raised at American National was, "Why would you be celebrating living in a home that - - where you were being

4

threatened constantly?" Jennings also testified that when the origin and cause investigator interviewed Carol Stutte she reported she left the others on trip in Nashville and returned; however, at the time she did not know the name of the hotel where they were staying. Also, Jennings noted that although Carol Stutte stated she was in Nashville with the group, besides not knowing the name of the hotel where she had been she did not know how the others returned from Nashville.

In addition, Jennings stated that when the neighbors and fishermen had come up to the house that was still standing, the doors were shut and there was no evidence of forced entry. A neighbor, Carl Self, who had been in the house before to do painting, came to the scene and did not notice any furniture in the house or pictures on the walls. The interview of another neighbor, Catherine Daugherty, revealed that she saw the Stuttes moving items out of the home in the two weeks leading up to the fire. Daugherty thought the Stuttes were moving because of the furniture being taken out. Also, interviews with neighbors gave different descriptions of Janice Millsaps that those held by the Stuttes. There were three dogs at the Stuttes, but none of the neighbors heard them barking prior to the fire.

Other factors noted by Jennings were that the receipt from the Wildhorse Saloon indicated that there were five people but the Stuttes reported four who traveled to Nashville. The group stayed at the restaurant after receiving notification of the fire. Jennings testified that American National had questions about why the entire group did not return on the night of the fire rather than just Carol Stutte. The reason given was that they

5

stayed behind and she just left to check on the dogs. The next day the group did not return immediately, but stayed in Nashville for a time advising that the rental car company did not open until noon. Jennings stated that they checked about the rental car company and found out that was not necessarily the case.

Jennings also testified that in just looking at photographs, there were similarities between the word that was spray-painted on the garage and words spray-painted on a piece of plywood at the Stuttes's other home that said, "Game cameras in use." American National also had a cell phone record analysis that indicated the Stuttes were someplace different from what they testified to. [The record reflects that the initial cell phone analysis done for American National contained errors.] Further, photographs, personal papers, and furniture had been moved out of the house prior to the fire. American National was informed that Janice Millsaps did not have spray paint on her hands and she passed a polygraph test. The Stuttes had said they had had problems with Janice Millsaps the entire time they had lived in the home, but in a police report for a stolen vehicle, Laura Stutte stated she had not had prior problems or was not having any problems with anyone in the area. The Stuttes changed their address at the post office and the electric company in August before the fire. Additionally, the Stuttes testified that they had no house alarm, but a sheriff's department report showed that the police had responded to an alarm going off at the home. [Jennings later admitted on cross examination that the police report was not for the Stuttes's address.]

6

II.

*Standard of Review*

Plaintiff's motion to dismiss is being considered by the court as a motion for summary judgment under Federal Rule of Civil Procedure 56.[2] Rule 56(a) sets forth the standard for governing summary judgment and provides in pertinent part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The procedure set out in Rule 56(c) requires that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion." This can be done by citation to materials in the record, which include depositions, documents, affidavits, stipulations, and electronically stored information. Fed. R. Civ. P. 56(c)(1)(A). Rule 56(c)(1)(B) allows a party to "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party to present specific facts demonstrating that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir. 1992) (citing *Gregg v. Allen-Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)).

---

[2] In this case, plaintiff seeks dismissal of claims asserted in defendants' counterclaim. The "Second Amended Counterclaim" [doc. 53] is now the counterclaim before the court.

In order to defeat the motion for summary judgment, the non-moving party must present probative evidence that supports its complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). The non-moving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor. *Id.* at 255. The court determines whether the evidence requires submission to a jury or whether one party must prevail as a matter of law because the issue is so one-sided. *Id.* at 251-52.

III.

*Analysis*

In the motion before the court, American National continues to argue that Tennessee law does not recognize claims for negligent and intentional infliction of emotional distress in the context of an insurance denial. The court has already ruled on that issue, doing so at the time the Stuttes sought to amend their counterclaim and assert the two claims [doc. 52]. The court will not address the issue again. In its ruling, the court determined that the Stuttes could assert negligent and intentional infliction of emotional distress claims, but the court made no determination whether the claims would survive a pretrial dispositive motion. Therefore, American National's motion will be denied to the extent it seeks dismissal on the grounds that the claims cannot be asserted. Nevertheless, as discussed below, the motion will be granted on the grounds that required elements of both claims have not been demonstrated.

8

**Intentional Infliction of Emotional Distress**

There are three elements to the cause of action for intentional infliction of emotional distress under Tennessee law: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997) (citations omitted); *see also Lourcey v. Estate of Scarlett*, 146 S.W.3d 48, 51 (Tenn. 2004) (citing *Bain*). In *Bain*, the Tennessee Supreme Court also noted that it has "adopted and applied the high threshold standard described in the Restatement (Second) of Torts" for determining when particular conduct is tortious. *Bain*, 936 S.W.2d at 622-23. The Court stated:

> The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. **Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.** Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous."

9

*Id*. at 623 (emphasis added) (citations omitted); *see also Leach v. Taylor*, 124 S.W.3d 87, 92 (Tenn. 2004) (citing *Bain*); *Davis v. Covenant Presbyterian Church*, No. M2013-02273-COA-R3-CV, 2014 WL 2895898, at *6-7 (Tenn Ct. App. June 23, 2014) (quoting *Bain*) *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) ("the conduct must be atrocious"). "[T]he outrageousness requirement is an 'exacting standard' which provides the primary 'safeguard' against fraudulent and trivial claims." *Doe I v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 39 (Tenn. 2005) (quoting *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999)); *see also Lane*, 334 S.W.3d at 763 ("A plaintiff seeking damages for intentional infliction of emotional distress must meet an 'exacting standard.'") (citing *Miller*). "Thus, liability for intentional infliction of emotional distress 'does not extend to mere insults, indignities, threats, annoyances, petty oppression or other trivialities.'" *Davis*, 2014 WL 2895898 at *7 (quoting *Bain*, 936 S.W.2d at 622).

"It is for the trial court to determine, in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Thus, the trial court may reasonably dismiss this legal theory as a matter of law." *Lane*, 334 S.W.3d at 763 (internal citation omitted); *see also Vanderbilt Univ. v. Pesak*, No. 3:08-cv-1132, 2011 WL 4001115, at *13 (M.D. Tenn. Sept. 8, 2011) ("It is the Court's duty in the first instance to apply the standard and make a preliminary determination as to 'whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.'") (citing *Bain*, 936 S.W.2d at 623).

10

A plaintiff must also prove that a defendant's conduct resulted in the plaintiff suffering a serious or severe mental injury. The standard for assessing a plaintiff's emotional injury includes a "reasonable person" element, providing that "a serious or severe mental injury occurs where a reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case . . . ." *Brown v. Mapco Express Co.*, 393 S.W.3d 696, 705 (Tenn. Ct. App. 2012) (quoting *Rogers v. Louisville Land Co.* 367 S.W.3d 196, 210 (Tenn. 2012). The Tennessee Supreme Court has identified a list of nonexclusive factors to aid in the analysis and that are relevant to demonstrate a plaintiff's claim for serious mental injury:

> (1) Evidence of physiological manifestations of emotional distress, including but not limited to nausea, vomiting, headaches, severe weight loss or gain, and the like;
>
> (2) Evidence of psychological manifestations of emotional distress, including but not limited to sleeplessness, depression, anxiety, crying spells or emotional outbursts, nightmares, drug and/or alcohol abuse, and unpleasant mental reactions such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, and worry;
>
> (3) Evidence that the plaintiff sought medical treatment, was diagnosed with a medical or psychiatric disorder such as post-traumatic stress disorder, clinical depression, traumatically induced neurosis or psychosis, or phobia, and/or was prescribed medication;
>
> (4) Evidence regarding the duration and intensity of the claimant's physiological symptoms, psychological symptoms, and medical treatment;
>
> (5) Other evidence that the defendant's conduct caused the

> plaintiff to suffer significant impairment in his or her daily functioning; and
>
> (6) In certain instances, the extreme and outrageous character of the defendant's conduct is itself important evidence of serious mental injury.

*Rogers*, 367 S.W.3d at 209-10. "The plaintiff may present this evidence by his or her own testimony, the testimony of lay witnesses acquainted with the plaintiff such as family, friends, and colleagues, or by the testimony of medical experts." *Id*.

The court initially finds that the conduct about which the Stuttes complain does not rise to the standard required for intentional infliction of emotional distress. The Stuttes have a litany of complaints concerning how the investigation of the fire has been conducted, the reasons given by American National for not paying the claim and continuing not to pay the claim, and the defenses asserted by American National in its declaratory judgment action. Obviously, the Stuttes do not agree with the position taken by American National regarding the handling of the claim. Nevertheless, the record does not support a finding that American National's actions are "outrageous" or "utterly intolerable in a civilized community." The Stuttes contend that the investigation was sloppy, one-sided, incorrect, incomplete, lacking in thoroughness, etc. However, the deposition testimony of the claims investigator Stacey Jennings sets forth the factual circumstances that led American National to reach its decision to deny the claim and to assert the policy defenses of intentional loss, which in this case involves arson, and concealment or fraud. Whether American National's conduct in deciding to deny the claim will withstand the Stutte's bad faith failure to pay claim is a matter for the

12

jury to determine. The conduct does not, however, demonstrate that American National's actions were "extreme and outrageous," "atrocious," and "beyond all bounds of decency."

A similar case is *Carrol v. Allstate Insurance Company*, 815 A.2d 119 (Conn. 2003). In *Carrol*, the insured brought suit against his insurer for intentional infliction of emotional distress based upon the treatment he received from the insurer during the investigation of his fire loss claim. An issue on appeal was whether the insured presented sufficient evidence at trial to establish liability for intentional infliction of emotional distress, specifically whether the insurer's conduct was extreme and outrageous. At trial, the insured presented proof that the insurer's investigation was poorly conducted and not thorough, that its investigator's determination that the fire was arson was impulsive, and that the investigator may have been biased against the insured, an African-American. The insured testified at trial that he heard one of the inspectors say, "the son of a bitch is mine" when learning that the insured homeowner was black; that he was harassed by frequent requests for personal information and repeated house inspections; and that he felt like a criminal because of the offensive questions he was asked during interviews that insinuated criminal behavior.

The elements of intentional infliction of emotion distress in Connecticut are virtually the same as in Tennessee and follow the standard set forth in the Restatement (Second) of Torts requiring that the conduct be extreme and outrageous. *Id*. at 126. The Court in *Carrol* determined that the insurer did not engage in extreme or outrageous conduct

13

when it erroneously concluded that the insured's fire was the result of arson. The Court found that there was insufficient evidence for the jury to reasonably conclude that the insurer's "conduct in its fire investigation was extreme and outrageous." *Id*. The Court stated: "The [insured] produced evidence that the [insurer] did not conduct a thorough or reasoned investigation and may have decided too quickly that the fire had been set deliberately. As distressing as this insurance investigation may have been to the [insured], however, it simply was not so atrocious as to trigger liability for *intentional* infliction of emotional distress." *Id*. (emphasis in original).[3]

In like fashion, a jury might find American National's investigation of the Stuttes's fire loss to be lacking in thoroughness and incomplete or its conclusions to be incorrect. Yet that does not, however, signify that American National's conduct is so atrocious as to be utterly unacceptable in civilized society. The conduct standard for intentional infliction of emotional distress is an exacting one and has not been demonstrated in this case. For that reason alone, the Stuttes's intentional infliction of emotional distress claims fail.

The claims also fail because the Stuttes have not demonstrated severe mental injuries. Aside from the fact that American National's conduct is not extreme and outrageous, the Stuttes have not presented proof of their having severe mental injuries. They

---

[3] The Court found that the evidence was sufficient to sustain liability for negligent infliction of emotional distress. The elements for negligent infliction of emotional distress in Connecticut are not all similar to the elements for that claim under Tennessee law. For example, the conduct does not have to be extreme and outrageous as required in Tennessee.

14

allege in their counterclaim in support of their claims that they are suffering from high blood pressure, depression, and sleeping problems. However, these intentional infliction of emotional distress claims are before the court on summary judgment. "To defeat a motion for summary judgment a plaintiff can no longer rely on the conclusory allegations of its complaint." *Warf v. U.S. Dep't of Veterans Affairs*, 713 F.3d 874, 878 (6th Cir. 2013) (internal quotation marks and citation omitted); *see also Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001) ("[T]he party opposing the [summary judgment] motion may not rely solely on the pleadings . . . ."). To defend against a motion for summary judgment, the nonmoving party "must present significant probative evidence in support of its complaint to defeat the motion for summary judgment." *Expert Masonry, Inc. v. Boone Cnty., Ky.*, 440 F.3d 336, 341 (6th Cir. 2006). The Stuttes reference their discovery responses as support for their mental injury claims, but they do not specifically identify the responses nor do they provide them. There is no proof in the record to which the relevant factors identified above can be applied nor is there proof to demonstrate the extent of the Stuttes's alleged mental injuries. On this basis, their claims for intentional infliction of emotional distress also fail.

Additionally, a reasonable person, normally constituted, would be able to cope adequately with the circumstances of this case. The events described are certainly unpleasant and stressful. Losing a house and contents to a fire and dealing with claim forms and all that process entails is very trying. Contending with a claim denial is frustrating and difficult, but a normally constituted reasonable person would able to deal with these

15

circumstances. As discussed above, American National's conduct does not meet the standard for an intentional infliction of emotional distress claim, and it is not sufficient to result in a severe mental injury.

Furthermore, while the Stuttes allege they have suffered severe mental injuries, due in part to their contention that American National has publically accused them of arson and fraud, they have sought and accepted media attention about their situation. The record contains multiple media reports of newspaper and video interviews and pictures of the Stuttes and their property. They complain that American National has made public accusations about them, but they have sought public attention through the media.

Finally, there is no showing that American National's conduct was intentional or reckless. "The recklessness element requires the defendant to be aware of, but consciously to disregard, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care which, under all the circumstances, an ordinary person would have exercised." *Doe I*, 154 S.W.3d at 39. The Stuttes have argued that American National's investigation was one-sided, sloppy, not thorough, incorrect, and incomplete. Nevertheless, such contentions do not translate into conduct that is intentional and reckless, and it does not meet the requirements of an intentional infliction of emotional distress claim.

16

## Negligent Infliction of Emotional Distress

"The elements of a claim for negligent infliction of emotional distress include the elements of a general negligence claim, which are duty, breach of duty, injury or loss, causation in fact, and proximate causation. In addition, the plaintiff must prove that the defendant's conduct caused a serious or severe emotional injury." *Rogers v. Louisville Land Co.* 367 S.W.3d 196, 206 (Tenn. 2012) (citations omitted). The analysis for the serious or severe emotional injury under negligent infliction of emotional distress is the same as that for intentional infliction of emotional distress, and the case law in the context of both torts applies. *Id*. at 206-07.

Additionally, "in the elements that must be established for a claim of negligent infliction of emotional distress, the requirement that the stimulus conduct be extreme and outrageous is interwoven with the 'reasonable person' component of the element of serious or severe emotional injury. In effect, the plaintiff must prove that the conduct giving rise to his claim was so extreme and outrageous that it would have caused a reasonable person to suffer serious or severe emotional injury." *Brown v. Mapco Express, Inc*., 393 S.W.3d 696, 706 (Tenn. Ct. App. 2012); *Foster v. Amarnek*, No. 3:13-516, 2014 WL 1961245, at *7-8 (M.D. Tenn. May 14, 2014) (quoting *Brown*).

Thus, as with the claim for intentional infliction of emotional distress, the Stuttes must demonstrate that American National's conduct was extreme and outrageous and so extreme and outrageous so as to cause them severe emotional injury. As discussed above,

17

they have not made this showing. American National's conduct is not extreme and outrageous nor unacceptable in a civilized community. Also, the Stuttes have not demonstrated severe mental injuries. Accordingly, for the same reasons already set forth regarding their intentional infliction of emotional distress claims, the Stuttes's negligent infliction of emotional distress claims fail and also will be dismissed.

IV.

*Conclusion*

Therefore, for the reasons discussed above, American National's motion [doc. 56] will be granted in part and denied in part. The motion will be granted on the grounds that the required elements of the claims have not been demonstrated. The Stuttes's claims for intentional and negligent infliction of emotional distress will be dismissed. The motion will be denied to the extent it seeks summary judgment on the grounds that the intentional and negligent infliction of emotional distress claims cannot be asserted. To the extent American National's filing [doc. 67] is identified on the court's docket as a "motion for summary judgment," that motion will be denied as moot. An order consistent with this opinion will be entered.

ENTER:

                          s/ Leon Jordan
                     United States District Judge