UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| AMERICAN NATIONAL PROPERY AND CASUALTY COMPANY, | ) ) ) | |
|---|---|---|
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:11-CV-219 |
| CAROL ANN STUTTE, *et al.*, | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The current case centers on a dispute over the loss of the Defendant-Counter-Plaintiffs' ("the Stuttes") home in a fire. The fire occurred on September 4, 2010. Following the loss, the Stuttes made a claim against their homeowners' insurance policy ("Policy"). On investigation of the claim, the Stuttes and their insurer ("ANPAC") became involved in a dispute over whether the Stuttes had intentionally destroyed their home. Between late 2010 and April 2011, ANPAC conducted an extended investigation into the circumstances of the fire. Letters from the Stuttes document their frustration with ANPAC's refusal to pay their claim. On May 13, 2011, ANPAC filed this Action seeking a declaratory judgment that the Stuttes' intentional actions in destroying their home relieved it from its obligations under the Policy. This Court has diversity jurisdiction over the case pursuant to 28 U.S.C. § 1332.

The Stuttes made counterclaims under multiple theories and have sought multiple forms of damages. Relevant to this Motion, the Stuttes made claims for (1) common law breach of contract, for which they seek direct, consequential, and punitive damages, (2) violations of the Tennessee Consumer Protection Act, for which they seek treble damages under the statute, and

(3) bad faith refusal to pay under Tennessee insurance statutes, for which they seek a 25% statutory penalty. Both Tennessee's insurance code and the Tennessee Consumer Protection Act ("TCPA") provide penalties for unfair practices. The insurance "bad faith statute" permits penalties against insurers who deny a claim in bad faith. Tenn. Code Ann. § 56-7-105. The bad faith award is capped at 25% of the actual damages award. For claims arising prior to 2011, the TCPA provides an award of treble damages for unfair or deceptive acts in commerce.

## PROCEDURAL POSTURE

In the parties' Proposed Pre-trial Order [doc. 117], they raise the issue of "Whether the Stuttes are entitled to seek punitive damages" as a "Novel or Unusual Question of Law". The Court anticipates that the Plaintiff-insurer will argue that the Tennessee insurance law provides an exclusive remedy and therefore precludes the Stuttes from recovering common law punitive damages and treble damages under the TCPA. To be clear, the Plaintiff has previously argued that the Stuttes' TCPA claim should be barred by operation of the exclusivity provision contained in the insurance code's Unfair Trade Practices and Unfair Claims Settlement Act ("UTPA") and applying to actions that accrued prior to April 29, 2011. There is no question that the Stuttes are entitled to seek damages under the TCPA if their cause arose prior to the statute's effective date.

The parties have not, however, addressed the availability of punitive damages. To avoid unnecessary delay at trial, the court issues this opinion to determine if the Stuttes are permitted to seek and/or recover all three types of damages under Tennessee law.

## LAW AND ANALYSIS

a. **The Availability of TCPA Treble Damages Cumulative to the Bad Faith Penalty Prior to April 29, 2011**

Tennessee courts historically held that the bad faith and TCPA penalties could be awarded together. In *Myint v. Allstate Ins. Co.*, the defendant-insurer argued that § 56-7-105 should be construed as providing an exclusive extracontractual remedy as between the insured and insurer. 970 S.W.2d 920 (Tenn. 1998). The Tennessee Supreme Court, however, disagreed, stating that it "found nothing under the [insurance statutes] or the bad faith statute which limits an insured's remedies to those provided therein." *Id.* at 925. Therefore, the bad faith penalty was not exclusive and "[did] not foreclose application of the TCPA to insurance companies." *Id.* The court further determined that the TCPA's treble damages provision was intended to be cumulative to other provisions of Tennessee law. *Id.* Calling the statutory language "crystal clear," the court interpreted the "Insurance Trade Practices Act, the bad faith statute, and the Consumer Protection Act as *complementary* legislation." *Id.* at 926 (emphasis in original). This Court recognized and applied *Myint* as allowing the cumulative penalty. *Fulton Bellows, LLC v. Fed. Ins. Co.*, 662 F.Supp. 976, 997 (E.D. Tenn. 2009). Prior to the 2011 amendments, the Tennessee Supreme Court did not address § 105's impact on the availability of common law punitive damages.

After *Myint* was decided, the Tennessee legislature amended its insurance laws to protect insurance companies from double exposure to penal damages. For causes of actions arising after April 29, 2011, the law provides that the remedies contained therein are the "sole and exclusive statutory remedies and sanctions applicable to an insurer . . . for alleged breach of, or for alleged unfair or deceptive acts or practices in connection with, a contract of insurance[.]" Tenn. Code Ann. § 56-8-113. Federal courts have recognized that the statute abrogated the prior case law, eliminated TCPA actions against insurers, and made the bad faith statute the only penalty

available to insureds claiming wrongful claims denials. *See, e.g., Murphy v. Allstate Indemnity Co.*, 2014 WL 1024165 (E.D. Tenn. March 17, 2014) (slip copy); *Price's Collision Ctr., LLC v. Progressive Haw. Ins. Corp.*, 2013 U.S. Dist. LEXIS 154225 (M.D. Tenn. Oct. 28, 2013); *Montesi v. Nationwide Mut. Ins. Co.*, 2013 U.S. Dist. LEXIS 121874 (W.D. Tenn. Aug. 26, 2013).

    b. <u>**The Availability of Punitive Damages Cumulative to a Bad Faith Penalty**</u>

In 2012, the Sixth Circuit examined the intersection between the UTPA's exclusivity provision and common law punitive damages in a case arising <u>before</u> the statutory amendments. In *Heil Co. v. Evanston Ins. Co.*, a jury awarded compensatory and punitive damages after finding that an insurer's refusal to pay a claim was in bad faith. 690 F.3d 722 (6th Cir. 2012). The appellate court struck the punitive award, finding that § 105 was the "exclusive extracontractual remedy for an insurer's bad faith refusal to pay on a policy." *Id.* at 728. Thus, the court determined that the pre-2011 statute precluded punitive damages, even where they attached to a common law breach of contract. *Id.* Following *Heil*, this Court found that an improperly-pleaded bad faith claim could not support a punitive damages award under Tennessee law. *Bowery v. Berkshire Life Ins. Co. of America*, 2013 WL 1497339 (E.D. Tenn. April 11, 2013) (relying on *Leverette v. Tennessee Farmers Mutual Insurance Company*, No. M2011-00264-COA-R3-CV, 2013 WL 817230 (Tenn. Ct. App. Mar. 4, 2013)). The Court also noted in dicta that other courts viewed § 105 as precluding punitive damages awards. *Id.* (citing *Mathis v. Allstate Ins. Co.*, No. 91-5754, 1992 SL 70192, at *4 (6th Cir. 1992); *Heil*, 690 F.3d at 728; *Leverette v. Tennessee Mut. Farmers Ins. Co.*, 2013 WL 817230 (Tenn. Ct. App. Mar. 4, 2013); *Davidoff v. Progressive Hawaii Ins. Co.*, 2013 WL 124353 (M.D. Tenn. Jan. 9, 2013); see also

*Westfield Ins. Co. v. RLP Partners, LLC*, No. 3:13–00106 2013 WL 2383608 (M.D. Tenn. May 30, 2013).

After *Heil* and *Bowery* were decided, the Tennessee Court of Appeals spoke to the availability of common law punitive damages under the bad faith statute and specifically addressed the impact of § 113's exclusivity provision on the availability of punitive damages. In *Riad v. Erie Exchange*, an insured made a claim with his insurer, based on property loss that occurred in 2009. 436 S.W.3d 256 (Tenn. Ct. App. 2013). When the claim remained unpaid in August of 2011, the plaintiff filed a law suit. He sought and won damages under common law breach of contract, treble damages under the TCPA, a bad faith penalty, and punitive damages. On appeal, the *Riad* insurer first argued that § 56-8-113 should have precluded the plaintiff from recovering TCPA damages. *Id.* at 269. In an extensive discussion, the court rejected the defendant's argument, finding that the rule of *Myint* applied because the claim arose before the statute's effective date of April 29, 2011. *Id.* The court next turned to whether the jury was properly permitted to hear the plaintiff's claims for punitive damages stemming from the breach of contract claims. *Id.* at 275-766. Considering the insurer's reliance on *Heil*, the court declined to follow the federal court's interpretation of the bad faith statute and concluded that punitive damages may attach to a breach of contract claim against an insurer, provided that the cause of action arose prior to April 29, 2011. *Id.* at 276 (citing *Myint*, 970 S.W.2d 920). The court noted the difficulty of proving punitive damages in a breach of contract action, but extended *Myint* to make them available in an insurance dispute if the trier of fact "find[s] that a defendant acted either intentionally, fraudulently, maliciously, or recklessly." *Id.* (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)).

Although the Tennessee Supreme Court has not spoken on the issue, it is apparent to this Court that there is a conflict between the state appellate courts' interpretation of the bad faith penalty and UTPA in *Riad* and the Sixth Circuit's interpretation of the same as it applies to the availability of common law punitive damages. The Court must note that the *Bowery* and *Heil* cases did not directly determine the present issue—*Bowery* was based on an attempt to bring a bad faith claim under the common law and was therefore not considered through the lens of § 105, while *Heil* was decided on facts that pre-dated the 2011 amendments and based its reasoning on precedent from the same era. However, the federal cases did consider facts that occurred before April 29, 2011 and it is clear that the Tennessee Court of Appeals perceived a conflict with the federal court's analysis. *Riad*, 436 S.W.3d at 276 (characterizing the *Heil* opinion as "ignoring the *Myint* progeny of cases"). Simply stated, federal trial courts and the Sixth Circuit Court of Appeals have both considered cases arising before the 2011 amendments and found that the bad faith statute precluded common law punitive damages not provided therein, while the Tennessee Court of Appeals found that there was no such preclusion. Therefore, this Court is tasked with determining which view is binding upon it under the facts of this case.

### c. **When There is Conflict Between State and Federal Appellate Courts on an Issue Of State Law, Federal Courts Must Apply the Law of the Forum State**

Federal courts sitting in a diversity action are required to apply the law of the forum state. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Hampton v. Allstate Ins. Co.*, 48 F. Supp. 2d 739 (M.D. Tenn. 1999). "The principle guiding a federal court sitting in a diversity case is that the case must be decided according to state law even if the federal court considers this law to be unsound in principle or that another rule is preferable." *Tennessee River Pulp & Paper Co. v.*

*Eichleay Corp.*, 708 F.2d 1055 (6th Cir. 1983). Addressing the weight of a state appellate court's opinion, the Sixth Circuit has stated:

> A federal court sitting in diversity must apply the law of the state's highest court. If the highest court has not spoken, the federal court must ascertain from all available data what the state law is and apply it. If the state appellate court announces a principle and relies upon it, that is a datum not to be disregarded by the federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.

*Clutter v. Johns-Manville Sales Corp.*, 646 F.2d 1151, 1153 (6th Cir. 1981). Because the Tennessee Supreme Court has not addressed whether common law punitive damages were available in bad faith actions against insurers prior to 2011, the *Riad* opinion decided an issue of first impression. See e.g., *Harvey v. Tran*, 420 F.Supp.2d 831, 835-36 (M.D. Tenn. 2006) (discussing the effect of an unpublished state appellate decision). In determining that the "[p]laintiff was entitled to recover any damages applicable in breach of contract actions and was not statutorily limited to the recovery of the insured loss and the bad faith penalty," the appellate court unequivocally "announce[d] a principle and relie[d] upon it." Although the issue proves to be one on which reasonable courts could differ, as evidenced by this Court's own decision in *Bowery*, the Court sees no "other persuasive data" that the Tennessee Supreme Court would rule otherwise. Therefore, the Court finds itself bound to follow the Tennessee Court of Appeals's construction of the UTPA and to rule that the Stuttes may seek to recover common law punitive damages, provided the jury "find[s] that a defendant acted either intentionally, fraudulently, maliciously, or recklessly." *Riad v. Erie Exchange*, 436 S.W.3d 256, 276 (citing *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992)).

   **d. The Discovery Rule will Apply to the Stuttes' TCPA Claim**

To briefly clarify the related damages issue of whether the Stuttes can maintain a cause of action under the TCPA, the critical question is whether the cause of action arose prior to April 29, 2011, when Tenn. Code Ann. § 56-8-113 took effect. *Montesi v. Nationwide*, 970 F.Supp.2d 784, 789 (W.D. Tenn. 2013). If the TCPA cause arose prior to April 29, 2011, the Stuttes are entitled to seek relief under Tennessee law. Although the Stuttes first filed their counterclaim on August 10, 2011, this is not necessarily the date on which the cause arose. Tennessee's "discovery rule" applies to actions under the TCPA. *Id.*; *Riad*, 436 S.W.3d 256, 269 (Tenn. Ct. App. 2013) ("This court has repeatedly held that a TCPA claim accrues when the unlawful act or practice is discovered, thereby making the discovery rule applicable to such actions.") (citing *Fortune v. Unum Life Ins. Co.,* 360 S.W.3d 390, 402 (Tenn. Ct. App. 2010)). Under the discovery rule, a cause of action accrues when a claimant "knows or in the exercise of reasonable care and diligence should know that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *John Kohl & Co. P.C. v. Dearborn & Ewing*, 977 S.W.2d 528, 532 (Tenn. 1998). The time at which a party knew or should have known that it suffered an injury is a question of fact.

In prior pleadings, the Stuttes have asserted that the dispute over the Policy obligations began in 2010 and that the Plaintiff effectively denied their claim well before April 29, 2011. The Court, therefore, reserves the issue for resolution at trial. Because the parties have not set forth their theory as to when the alleged breach of contract occurred and the deadline for dispositive motions has long expired, the Court likewise reserves the issue of when that claim for trial.

e. **Plaintiffs Seeking Multiple Forms of Penal Damages Must Elect Between Remedies**

To be clear, Tennessee law permits the Stuttes to <u>seek</u> the cumulative penal damages discussed herein, but they will not be permitted to <u>collect</u> all three types of damages. The election of remedies doctrine "prevent[s] double redress for a single wrong." *Miller v. Automax*, 166 S.W.3d 692 (Tenn. 2005). Because the bad faith penalty, treble damages, and common law punitive damages are all punitive in nature, they cannot be recovered cumulatively for the same actions. *Concrete Spaces, Inc. v. Sender*, 2 S.W.3d 901, 906 (Tenn. 1999). The *Concrete Spaces* court outlined the proper procedure to follow where an election of remedies is required and we will follow that here. *Id.* at 908. Should the jury determine that the Stuttes are entitled to any damages in this case, they will be permitted to submit all theories to the jury, which must decide whether the Stuttes are entitled to penal damages under each theory, and if so, in what amount. *Id.* The Stuttes may then elect the final remedy for judgment.

## **CONCLUSION**

In summary, if the Stuttes' causes of action under the TCPA and under a common law breach of contract theory arose prior to April 29, 2011, they are entitled to seek common law punitive damages, treble damages under the TCPA, and a bad faith penalty under Tennessee insurance law. If the actions arose after April 29, 2011, the Stuttes will be restricted to contract damages and the bad faith penalty. The exact date on which the causes arose is an issue for the trier of fact and may be argued at trial.

The jury charges will include instructions as to all three forms of damages. The instructions will further provide (1) that a punitive damages award may only follow a finding that the Stuttes' claim for breach of contract arose prior to April 29, 2011, and (2) that an award of TCPA damages may only follow a factual finding that the Stuttes' TCPA claim arose prior to

April 29, 2011. Should the Stuttes be awarded more than one form of extra-contractual damages, they will be required to elect among the awards.

**IT IS SO ORDERED**.

ENTER:

_s/ Leon Jordan_

UNITED STATES DISTRICT JUDGE