UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| AMERICAN NATIONAL PROPERY AND CASUALTY COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 3:11-CV-219 ) |
| CAROL ANN STUTTE, *et al.*, | ) ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

This case is scheduled for trial on June 16, 2015. The parties submitted, and the Court approved, a proposed pre-trial order [doc. 117], which contained an enumerated list of "novel issues" of law involved in the case. Pursuant to the Court's order, the parties submitted briefs arguing their respective positions as to issue no. 4:

> "Can the Stuttes seek to recover the 25% bad faith penalty under Tennessee Code Annotated § 56-7-105, and/or punitive damages under the Tennessee Consumer Protection Act, based, in whole or in part, on ANPAC's refusal to reconsider its decision to deny the claim during the course of litigation?"

Because issue no. 4 is a question of law that will impact the relevance of certain evidence and argument, judicial efficiency is served by resolving it prior to trial.

**RELEVANT FACTUAL BACKGROUND**

The dispute in this case centers around the loss of the Defendants and Counter-Plaintiffs' ("the Stuttes") home in a fire that occurred in September 2010. The Stuttes filed a claim with their insurer ("ANPAC"), prompting an investigation into the circumstances of the fire. ANPAC concluded that the Stuttes had intentionally set the fire and determined that there was no

coverage under the relevant policy terms. ANPAC filed this action in May of 2011, seeking a declaratory judgment to clear its obligations under the policy. The Stuttes filed counterclaims for breach of contract and unfair practices under the Tennessee Consumer Protection Act. After sending a formal demand for payment on May 19, 2011 and receiving no response, the Stuttes amended their pleadings to include a bad faith allegation under Tenn. Code Ann. 56-7-105. [doc. 20]. The Stuttes allege that ANPAC conducted a one-sided investigation and ignored evidence proving they did not set the fire. They claim that ANPAC acted in bad faith not only during the initial investigation, but also over the course of this litigation.

The Stuttes seek three forms of penal damages, based on ANPAC's actions both before and after this action was commenced: (1) a bad faith penalty under Tennessee insurance law, (2) treble damages under the Tennessee Consumer Protection Act, and (3) common law punitive damages[1]. For the purposes of this opinion, ANPAC does not dispute that the penal damages may be sought, but argues that any award can only be based on the pre-litigation events.

## LAW AND ANALYSIS

Tennessee insurers have a duty to act in good faith. While there is no separate tort for breach of good faith, Tennessee statutory law allows insureds to seek a penalty up to 25% of the total liability where a claim is denied in bad faith. *Wynne v. Stonebridge Life Ins. Co.*, 694 F. Supp. 2d 871 (W.D. Tenn. 2010). The relevant portion of the statute reads:

> **(a)** . . . in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy . . . [insurers] shall be liable to pay the holder of the policy . . . a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that

---

[1] The Court determined in a previous order that all three forms of damages are available under Tennessee law. [doc. 183].

> the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

Tenn. Code Ann. § 56-7-105(a). Translated in plain English, the statute provides that "when insurers refuse to pay a loss within sixty days of a demand, they will be subject to a penalty if the jury finds that the refusal was made in bad faith and that the insured suffered additional injury as a result of the refusal to pay." Case law is clear that the requirement for an insured to make a formal demand and wait sixty days before filing suit (unless there is a refusal comes earlier) demands strict compliance. *Palmer v. Nationwide Mut. Fire Ins. Co.*, 723 S.W.2d 124, 126 (Tenn. Ct. App. 1986). There is no dispute as to the demand in this case.

The question currently before the Court is whether, under § 105, the bad faith finding must be based on the decision to refuse the claim <u>as the facts existed sixty days from the date of the claimant's demand</u>[2] or whether subsequent decisions to stand by its refusal may be the basis of the determination. However, because a finding in favor of the former proposition would equate to a finding that there can be no penalty for bad faith occurring after the expiration of the sixty days (or after an express refusal if made before the sixty days runs), the first and most obvious question is whether the Tennessee legislature meant to sever the insurer's bad faith obligation at the time of refusal[3]. The Court cannot believe that it did.

To begin, insurers have a duty to act in good faith, and nothing in this statute or any other applicable law indicates that the duty is severed by litigation. This may be an unaddressed issue

---

[2] The Stuttes' demand was sent on May 19, 2011. The sixty-day period expired without reply from ANPAC on July 18, 2011.
[3] The statute's express application to "additional expense, loss, or injury" makes clear that the legislature did not intend to limit monetary liability to that existing at the time of the initial refusal to pay.

of law in Tennessee, but until the state judiciary rules otherwise, this Court will consider it a matter of common sense: an insurer does not get to unilaterally absolve itself of the duty to treat policy holders fairly by filing a lawsuit. As the Stuttes' note, Tennessee's sister courts agree that the duty of good faith continues after a lawsuit is filed. To highlight just a few of the many opinions: the Kentucky Supreme Court held that duties of fair dealing did not end after litigation commenced, *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512 (Ky. 2006) See also *Budde v. State Farm Mut. Auto. Ins. Co.*, No. 5:09-CV-00053-TBR, 2009 WL 3483951, at *8 (W.D. Ky. Oct. 22, 2009) (finding that refusal to settle after liability became reasonably clear could be basis of bad faith finding under Kentucky law); the Supreme Court in California reasoned that litigation could not terminate the duty of good faith because it could not end the contractual relationship, *White v. W. Title Ins. Co.*, 710 P.2d 309, 317 (Cal. 1985); the Montana Supreme Court stated "an insurer's duty to deal fairly and not to withhold payment of valid claims does not end when an insured files a complaint against the insurer[.]" *Palmer by Diacon v. Farmers Ins. Exch.*, 861 P.2d 895, 913 (1993); the Arizona Court of Appeals found that failure to investigate while a declaratory judgment suit was pending could be the basis of a breach of the duty of good faith, *Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 642 (Ariz. Ct. App. 2011); and the Georgia Court of Appeals held that litigation does not relieve an insurer of the duty to complete an investigation reasonable, *United Servs. Auto. Ass'n v. Carroll*, 486 S.E.2d 613, 616 (1997). But see *Conti v. Republic Underwriters Ins. Co.*, 782 P.2d 1357, 1359 (Okla. 1989) ("The action of the company must be assessed in light of all facts known or knowable concerning the claim *at the time plaintiff requested the company to perform its contractual obligation.*")(citations omitted)(emphasis in original). This Court is persuaded that the Tennessee courts and legislature would hold similarly. Therefore, the Court has no trouble finding that ANPAC had a good faith

duty to consider evidence that came to light over the course of this litigation, and if that evidence made clear that the Stuttes did not destroy their home and that they were due losses under the policy, it should have paid their claims.

Again, however, this is not the question before the Court and we must distinguish a <u>duty</u> to do something from the evidence that is relevant to determining whether that duty was breached and the liability that may be imposed for said breach. The question is one of statutory construction. "The court's role in construing statutes is to give effect to the General Assembly's intentions." *Richardson v. Fentress County Sch. Bd.*, 840 S.W.2d 940 (Tenn. Ct. App. 1992). "In seeking to ascertain legislative intent, a statute should be read as a whole, not in parts. A statute's meaning is to be determined not from special words in a single sentence or section, but from the act taken as a whole, viewing the legislation in light of its general purpose." *Pearson v. Hardy*, 853 S.W.2d 497 (Tenn. Ct. App. 1992) (internal citations omitted).

It does not take a crystal ball to see that the statute's primary purpose is to ensure the fair treatment of policyholders and encourage timely claims decisions. There is no room for dispute in this regard. However, ANPAC raises an interesting argument as to the sixty-day deadline. ANPAC argues that the only refusal contemplated by the statute is "that refusal," i.e., the one occurring during the sixty-day window. ANPAC cites the historic *Thompson v. Interstate Life & Acc. Co.*, which read an early version of the statute to set sixty days as the maximum time for an insurer to complete an investigation. 162 S.W. 39 (Tenn. 1913). The court stated, "Sixty days is the extreme limit allowed by the Legislature in which the company can investigate the question of its liability, and, if it fails to respond to the demand for payment within that time, the suit may be commenced without proof of a refusal." *Id.* Therefore, ANPAC claims, the investigation

period is a closed universe and inquiry cannot extend beyond its time limit. This Court disagrees with the reading and finds that it does not comport with the statute's purpose.

According to the Tennessee Supreme Court, the legislative purpose was "to supersede the necessity of suit . . . the underlying thought being that the insurers [would] be induced to pay the loss without suit, in the absence of some real and bona fide defense." *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 164 S.W. 1186, 1190 (Tenn. 1914). The *Kirkpatrick* court interpreted the statute's formal demand requirement as "intended to operate as a fair warning to the insurer that the penalty will be claimed, on failure to pay within 60 days." *Id.* Modern cases interpreting contemporary versions of the bad faith statute have adhered to *Kirkpatrick's* view, stating that the sixty-day delay in suit is intended to give insurers "notice of the claim for bad faith and a period in which to reflect upon the consequences of its failure to pay." *Solomon v. Hager*, E200002586COAR3CV, 2001 WL 1657214, at *12 (Tenn. Ct. App. Dec. 27, 2001) (quoting *Walker v. Tennessee Farmers Mut. Ins. Co*., 568 S.W.2d 103, 107 (Tenn. Ct. App. 1977)). In other words, the statute primarily prescribes a waiting period for insureds to file suit; the sixty days is meant to allow insurers a grace period to evaluate a claim and avoid litigation after a demand is made. The fact that it may have the unintended effect of ending an investigation does not change the purpose of the statute. The *Thompson* opinion is not at odds with this. "The manifest purpose of the Legislature in fixing the limit of 60 days after a demand as the time in which the defendant could withhold payment was to enable it to investigate the nature of the loss and determine its liability under the contract." 162 S.W. at 39. Thus, this Court finds that the purpose of the legislature in prescribing the sixty-day period was not to set a hard cut off for investigation, but a deadline by which insurers must make a decision on whether to deny a claim, thereby prohibiting them from dragging their feet at the expense of their insureds. The Court sees

nothing in the statute that limits the bad faith penalty to pre-denial or pre-litigation events, nor is there any indication that the legislature intended to identify a critical timestamp for the bad faith determination; Tennessee courts have indicated another purpose entirely. Indeed, removing bad faith liability is contrary to the statute's paramount purpose of protecting insured; there is simply no basis to find that the state General Assembly intended to strip such protection after a claim denial.

The Court also disagrees with ANPAC's assumption that "the refusal" must be a singular, finite event. It is not. In this case, the "refusal to pay" refers to the denial of coverage for the Stuttes' claim. ANPAC's legal position in denying coverage under the policy has not changed over the course of this suit, just as the Stuttes' position that they are entitled to payment has not changed. The good faith obligations are not relieved by litigation; just as this Court will not find that insurers are absolved from their duties of fairness on filing a lawsuit, it will not entitle them to begin disregarding potentially exculpatory evidence at the same time. Therefore, if ANPAC breached its obligations when it denied coverage in 2010, and it has continued to deny coverage and/or refuse to settle the Stuttes' claim, then the "failure to pay" continues, and the failure remains subject to the bad faith penalty. This Court finds that if evidence relevant to ANPAC's continued refusal arose after this litigation commenced, then it had a duty to consider it and its refusal to do so can be the basis of a bad faith finding. However, no "new" refusal has occurred and the Stuttes have only one claim of bad faith.

With regard to the relevancy of post-litigation refusal to pay or settle a claim, the Court finds the same principles apply to the penal damages available under the Tennessee Consumer Protection Act. The Court makes no assessment of whether the conduct complained of indeed constitutes an unfair or deceptive practice under the TCPA, as the issue has not been raised. This

Court has already considered the viability of the TCPA action and determined that it is a question for the jury under Tennessee's discovery rule. [doc. 83]. Therefore, to the extent the Stuttes allege they are entitled to relief under the TCPA, that relief may be based on conduct occurring during the pendency of this suit, provided that (1) the conduct meets the standard of an unfair or deceptive act, and (2) the jury finds that the TCPA cause of action arose prior to April 29, 2011.

One final note of clarification is necessary: the Court holds that ANPAC's post-litigation conduct may be relevant to whether its decision to deny the Stuttes' claim was in bad faith, but only insofar as it relates to the claim or refusal to pay. Conduct or strategy related to the litigation process is not a proper basis for a bad faith finding. See *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 520-23 (Ky. 2006).

**IT IS SO ORDERED**.

ENTER:

s/ Leon Jordan
UNITED STATES DISTRICT JUDGE