UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| AMERICAN NATIONAL PROPERY | ) |
|---|---|
| AND CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:11-CV-219 |
| | ) |
| CAROL ANN STUTTE, *et al.*, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is the Plaintiff's ("ANPAC"), Sixth Motion in Limine to exclude the deposition testimony of witness, Chelsea Walle [doc. 220]. The Stuttes filed a response, to which ANPAC replied [doc. 242]. For the reasons stated herein, the Motion [doc. 220] is hereby **GRANTED** in part and **DENIED** in part.

This insurance dispute arises from a fire that destroyed the Defendants' ("the Stuttes") home in Vonore, Tennessee in 2010. After a claims investigation, ANPAC determined that the Stuttes had intentionally set the fire and denied their claim. The Stuttes deny any involvement and posit that a neighbor, Janice Millsaps, or someone else, was responsible for the fire. They allege that they received threats prior to the fire and that they were targeted as a homosexual couple.

In or around April 2015, the Stuttes learned of a witness, Chelsea Walle, with purported knowledge of who burned their house. On June 18, 2015, the Stuttes' counsel took Ms. Walle's

deposition, which they intend to introduce at trial. ANPAC files this motion seeking to exclude a large portion of Ms. Walle's testimony.

Ms. Walle testified that she lived near Vonore, Tennessee from December 2012 to October 2014. While living in Tennessee, Ms. Walle became friends with Katie Millsaps, who she believed to be a relative of Janice Millsaps. The Stuttes identified Janice Millsaps as a neighbor who threatened them in the past because of their sexual orientation.

Ms. Walle testified that Katie referred to Janice Millsaps as a "bad Millsaps," meaning that "she does things on her own terms." (Walle Depo. at 23). She also testified that the Millsaps family had a bad reputation in Vonore. (Walle Depo. at 26). Ms. Walle testified that she had heard Janice Millsaps make derogatory comments about homosexuals in public, including using the term "queers." (Walle Depo. at 23-24). Ms. Walle testified that, sometime in 2013, Katie Millsapps confessed to her that she and some friends burned down a house in the area and showed her the burn site. (Walle Depo. at 29). Chelsea testified:

> She had drove me to the spot where she said she burned the house down. . . . she explained to me that a few of her friends and them were partying in the house . . . [a]nd after they were done drinking and partying, they stuck a tire underneath the porch, poured gasoline in it, and set it on fire and burned the house down. (Walle Depo. at 30).

Chelsea described the burn site as located in a wooded area in the Ballplay community. (Walle Depo. at 31). She recalled a gravel driveway and a metal fence and testified that only the house's foundation and chimney were standing.[1]

---

[1] During her deposition, counsel showed Ms. Walle a photograph of a burn site and Ms. Walle identified some similarities between the photo and the site she visited with Katie Millsaps. However, it is unclear from the deposition transcript whether the photo showed the Stuttes' home or another site.

Katie Millsaps also gave a deposition in this case. She testified that she showed Ms. Walle a burn site, but that it was not the same as the Stuttes' home. Her account of the site's location is markedly different from Ms. Walle's. Katie Millsaps testified that she was not involved in the house fire at the burn site, but that her friends told her they set the fire by igniting a tire with gasoline. She testified that the house was abandoned at the time and that she did not know the Stuttes or where they lived. She further testified that she did not know Janice Millsaps and, to her knowledge, was not related to her. Katie Millsaps is expected to testify live at trial. [see docs. 209, 221]. Chelsea Walle is not expected to testify; ANPAC has designated certain portions of her testimony to present at trial.

## ANALYSIS

### A. Ms. Walle's Testimony Regarding Janice Millsaps' Statements About Homosexuals

Ms. Walle testified that she overheard Janice Millsaps make derogatory statements about a homosexual couple in public, including using the word "queers." The Court does not find this to be character evidence under Rule 404, because is not propounded to show that Janice Millsaps acted in conformity with her prior actions or character traits, but that she had a disdain for homosexuals that provided a motive for her to set the Stuttes' home on fire. The statements are not hearsay because they are not submitted for their truth, but to prove bias and motivation. ANPAC is not unduly prejudiced by the statements because it had an opportunity to examine Ms. Walle about her recollections and will have the opportunity to examine Janice Millsaps on the subject. The evidence will be **ADMISSIBLE**, but only so far as it concerns Janice Millsaps's views on homosexuals. Her statements with regard to African-Americans are irrelevant and will be **INADMISSIBLE**.

**B. <u>Ms. Walle's Testimony Regarding Katie Millsaps's Statements About Janice Millsaps' Reputation</u>**

ANPAC also moves to exclude Ms. Walle's testimony that Katie Millsaps made statements about Janice Millsaps's character. Specifically, they seek to exclude the statements that Janice was a "bad Millsaps," that she "just does things on her own terms," "doesn't call the law," and "handle[s disputes] herself or has somebody else do it for her." ANPAC also seeks to exclude Ms. Walle's related testimony about the reputation of the Millsaps family in the community. The Stuttes respond that the evidence is admissible because it is not barred by Rule 404 and that the statements fall under the hearsay exception in Rule 803(21).

Except where Rule 404 expressly permits, character evidence is inadmissible to prove a person's conduct. Evidence as to a witness's reputation is permissible in accordance with Rule 608 only when it regards a person's character for truthfulness. There is no 404 exception that would allow evidence that a person is a "bad Millsaps," nor does the statement concern her credibility as a witness. The "bad Millsaps" statement and Ms. Walle's testimony about the Millsaps family's reputation in general will be **INADMISSIBLE** at trial.

Rule 404(b) does permits character evidence where it goes to show that a person had a motive or opportunity to commit a specific act. The Stuttes argue this exception to admit the evidence that Janice Millsaps did not abide by the law and took matters into her own hands when it came to resolving disputes. The arguments are misplaced. First, Rule 404(b) contemplates specific bad acts, whereas the evidence in question goes to Janice Millsaps's general reputation and character traits. Rule 404(b) is therefore inapplicable. Second, even if it were applicable, assertions that Janice Millsaps liked to "handle" her own disputes rather than "call[ing] the law" have nothing to do with an alleged motive to destroy the Stuttes' house. By definition, a motive

goes to <u>why</u> something is done, not the <u>means</u> by which it is done. Likewise, Janice Millsaps's reputation for "handl[ing]" her own disputes does not show that she had an opportunity to burn the Stuttes' home.

As to the Stuttes' assertion that the statements fall under the hearsay exception in 803(21), they have missed a step. Rule 803(21) does not provide an independent basis for inclusion; it provides an exception for evidence that would otherwise be excluded under the hearsay rule. The evidence must first be shown relevant and admissible under any other applicable rules. Because the statement is inadmissible character evidence, Rule 803 is of no consequence here. The evidence will therefore be **INADMISSIBLE** at trial.

### C. <u>Ms. Walle's Testimony Regarding Katie Millsaps and the Burned Home</u>

ANPAC argues that Ms. Walle's testimony regarding the trip to the burned house is irrelevant to this case because she could not conclusively identify the burn site that Katie Millsaps allegedly burned as the Stuttes'. Relevant evidence is any evidence that tends to make a material fact more or less probable. Fed. R. Evid. 401. In this case, evidence that another person burned down the Stuttes' home is unquestionably relevant. The problem is that the relevance is conditional: Ms. Walle's story is only relevant if the burned property she saw is the same site as the Stuttes' former home. Ms. Walle did not have knowledge of the Stuttes' property, and could not testify as to who owned the house at the burn site. Ms. Millsaps testified that the house at the burn site was abandoned, but the Stuttes point out similarities between Ms. Walle's description of the burn site and the Stuttes' property. The two women's testimony also conflicts on the geographic location of the burn site. It is unclear whether either party attempted to investigate the exact location of the burn site after the depositions, although Katie Millsaps, who apparently still lives in the area, gave a detailed description of its location and mentioned the local fire

department's involvement in the incident. Nonetheless, the Court can only consider the evidence produced and that evidence presents a question of fact as to whether the burn site Katie and Chelsea visited is the Stuttes' property.

Where relevancy depends on a question of fact, the trial court must submit the question to the jury. If "there is any evidence at all that would support a finding that the [conditional fact] has been fulfilled, [it is left] to the jurors to determine both the preliminary question that determines the relevance of the underlying evidence and the value of the underlying evidence." *Douglass v. Eaton Corp.*, 956 F.2d 1339 (6th Cir. 1992). The Court finds that Ms. Walle's testimony regarding the location of the property she visited is sufficient to support a finding that the burn site and the Stuttes' property could be one and the same. Ms. Walle testified that the chimney, wooded area, and gravel at the burn site were similar to photographs of the Stuttes' property. Of course, ANPAC's counsel will be free to highlight the inconsistencies between the Stuttes' property and Ms. Walle's description of the burn site. The undersigned therefore rejects ANPAC's argument that the jury would be required to speculate to determine the truth of Ms. Walle's testimony. The jurors of this district are competent to follow their duty to base factual conclusions on the evidence before them; if they find the evidence falls short of a preponderance, they can disregard it.

ANPAC next argues that Katie Millsaps's oral statements, as told to Ms. Walle, are inadmissible hearsay. To be clear, Ms. Walle can testify to the trip, the location of the burn site, and to what she saw there. Only <u>statements</u> can meet the definition of hearsay. Specifically, Ms. Walle testified that Katie Millsaps admitted that she and friends set a fire at the burn site by igniting a gasoline-doused tire under the porch. The Stuttes first argue that they are not offering the evidence for its truth--to prove that Katie Millsaps was involved in the fire—but to show that

she had knowledge of a fire at that site. However, Ms. Walle's testimony is not necessary to establish Katie Millsaps's knowledge of a fire because Katie does not deny having such knowledge. Katie testified that she knew of the fire and of how it was set, and her testimony has not been challenged; no additional evidence is need to prove that point. The point on which the two women differ is whether or not Katie was herself involved in the arson. The Stuttes next argue that Ms. Walle's testimony must come in to impeach Katie Millsaps because Katie will testify that she was not involved in any fire. This may be true, but the Court cannot make assumptions regarding a live witness's testimony. The Court therefore finds that the issue is not ripe and reserves ruling on the testimony's admissibility as rebuttal evidence and under Rule 807 until the issue arises at trial.

Chelsea Walle's testimony regarding a visit to the site of a burned home will be **ADMISSIBLE** at trial, and the jury will determine whether the evidence is relevant. The Court **RESERVES THE ISSUE** of whether Katie Millsaps's hearsay statements, as told to Ms. Walle and regarding who burned the house at the burn site and how the house was burned will be admissible at trial.

**IT IS SO ORDERED**.

ENTER:

s/ Leon Jordan
UNITED STATES DISTRICT JUDGE